IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION No. 04-673-2 |
| | : | |
| v. | : | CIVIL ACTION No. 16-3148 |
| | : | |
| IRA POTTER | : | |

### MEMORANDUM

**Judge Juan R. Sánchez**                                                                          **October 10, 2024**

      Ira Potter filed a motion under 28 U.S.C. § 2255 seeking to vacate his conviction and sentence for possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c).  In instructing the jury on this charge, the Court told jurors the other offenses Potter was charged with—conspiracy to commit Hobbs Act robbery and Hobbs Act robbery—were crimes of violence.  The Government concedes this instruction was incorrect.  Hobbs Act conspiracy does not qualify as a crime of violence under § 924(c) following *Johnson v. United States*, 576 U.S. 591 (2015), and *United States v. Davis*, 588 U.S. 445 (2019).  And while Hobbs Act robbery does qualify, the robbery charge here encompassed attempted as well as completed robbery, and attempted Hobbs Act robbery is also no longer a crime of violence.  The issue is whether the instructional error was harmful under *Brecht v. Abrahamson*, 507 U.S. 619 (2003).  Because the Court is not persuaded there is a more than a reasonable possibility the jury convicted Potter of the § 924(c) charge based solely on an invalid predicate, on July 17, 2024, the Court issued an order denying Potter's § 2255 motion.  Potter filed a notice of appeal on September 10, 2024.  The Court issues this memorandum pursuant to Third Circuit Local Appellate Rule 3.1.

### BACKGROUND

      In October 2004, Potter and two codefendants were charged by Indictment with one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count One); one

count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count Two); and one count of possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count Three).[1]  Indictment, ECF No. 10.  The charges arose out of the defendants' participation in a violent home invasion on February 13, 2004, targeting the proceeds of Cousin Danny's Exotic Haven, a bar and restaurant in Philadelphia.  Potter and one of his codefendants had burglarized the bar a week earlier, stealing cash, a gun, and other items.  Believing the owner of the bar kept the bar's proceeds in his home, Potter and the codefendant developed a plan to steal the money from the home.  On February 13, armed with guns and a baseball bat, Potter, the codefendant, and a third individual entered the home of bar's owner, beat the owner and the three other occupants, and threatened them while unsuccessfully demanding $20,000 from the bar's receipts.  Upon learning from the bar's owner that any money he had was at the bar, the defendants stole the keys to the bar and left the home after restraining the residents with duct tape.  They drove to the bar, which Potter's codefendants entered using the keys.  In the meantime, the bar's owner partially freed himself and reported the crime to the police.  Police officers then went to the bar, where they found the two codefendants hiding in the ladies' restroom.  One of the codefendants later implicated Potter as the leader of the robbery.

Count One of the Indictment charged that the defendants conspired to commit robbery which would interfere with interstate commerce in that they "conspired to unlawfully take and attempted to take and obtain personal property, including money, and other items of value, including keys, from the person or in the presence of another and against their will, by means of actual and threatened force, violence, and fear of injury."  Indictment 1-2, ECF No. 10.  Count

---

[1] The defendants were also charged with aiding and abetting liability as to Counts Two and Three.

2

One further charged that as part of the conspiracy, the defendants "attempted to take proceeds from the business operations of Cousin Danny's Exotic Haven," a business "that receives liquor and other items through interstate commerce." *Id.* It also alleged that in furtherance of the conspiracy, the defendants stole the keys to the bar after breaking into the bar owner's home and threatening him and the home's other occupants at gunpoint. *Id.* at 3.

Count Two, the Hobbs Act robbery count, charged that defendants

> obstructed, delayed and affected commerce and the movement of articles and commodities in commerce, and attempted to do so, by robbery, in that[] [they] unlawfully took and attempted to take and obtained, and aided and abetted the unlawful taking and obtaining of personal property, including money, and other items of value, including keys, from the person or in the presence of another and against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person and property.

*Id.* at 5. Count Three charged that defendants "knowingly possessed three loaded semiautomatic pistols, in furtherance of a violent crime"—namely "conspiracy to interfere with interstate commerce by robbery, and interference with interstate commerce by robbery." *Id.* at 6.

Both of Potter's codefendants pled guilty and testified against Potter at trial. Potter defended the case primarily on the ground that he had been misidentified as a participant in the crime. In February 2005, a jury convicted Potter of all three counts. In June 2005, Potter was sentenced to a total of 205 months of imprisonment, consisting of 121 months on the conspiracy and robbery counts, to run concurrently, and a consecutive term of 84 months on the § 924(c) count. Potter's conviction and sentence were affirmed on direct appeal, and the Supreme Court denied certiorari. *See United States v. Potter*, 218 F. App'x 132 (3d Cir. 2007), *cert. denied*, 552 U.S. 892 (2007). Potter then filed a pro se motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, but that motion, too, was unsuccessful. *See United States v. Potter*, No. 04-673-

2, 2009 WL 320605 (E.D. Pa. Feb. 6, 2009) (denying § 2255 motion), *certificate of appealability denied*, C.A. No. 09-1813 (3d Cir. Feb. 9, 2010), ECF No. 118.

In May 2016, Potter, represented by the Federal Community Defender Office for the Eastern District of Pennsylvania, sought authorization from the Third Circuit to file a second or successive § 2255 motion in this Court to challenge his § 924(c) conviction and sentence based on the Supreme Court's then-recent decision in *Johnson v. United States*, 576 U.S. 591 (2015). Potter also filed a protective § 2255 motion raising his *Johnson*-based challenge to his § 924(c) conviction and sentence in this Court. In August 2019, the Third Circuit granted Potter leave to file a second or successive § 2255 motion and directed the motion be transferred to this Court.

In that motion, Potter argued his conviction and sentence under § 924(c) must be vacated because after *Johnson*,[2] his "predicate crime[s] of Hobbs Act robbery and conspiracy" no longer qualify as crimes of violence under the statute. Mot. to Correct Sentence 5, ECF No. 160-1. The motion was later stayed while the issue of whether Hobbs Act robbery qualifies as a crime of violence under § 924(c) was litigated in higher courts.

In February 2024, the Government filed a response to Potter's § 2255 motion, arguing the motion should be denied based on *United States v. Stoney*, 62 F.4th 108, 114 (3d Cir. 2003), in which the Third Circuit held completed Hobbs Act robbery remains a crime of violence under § 924(c). Gov't's Resp. 1, ECF No. 165. The Government acknowledged the § 924(c) charge was predicated not only on a robbery charge but also on a charge of conspiracy to commit robbery,

---

[2] In *Johnson*, the Supreme Court invalidated the so-called "residual clause" in the definition of a "violent felony" in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague and held that imposing an increased sentence under the clause violated due process. *See Johnson*, 576 U.S. at 597, 606. Potter argued the *Johnson* decision applied equally to the similarly worded residual clause in the definition of a "crime of violence" in 18 U.S.C. § 924(c)(3)(B), a position later endorsed by the Supreme Court in *Davis*, 588 U.S. at 470.

which would not qualify as a crime of violence. *Id.* But it maintained the inclusion of an invalid predicate was "irrelevant" because the § 924(c) charge was also "squarely grounded" on a robbery charge of which Potter was convicted. *Id.* at 2.

Potter then sought and was granted leave to file a reply. In his reply, Potter argues the erroneous jury instruction was not harmless because the robbery charge in Count Two encompassed both attempted and completed Hobbs Act robbery. Potter maintains that, viewing record as a whole, there is more than a reasonable possibility (or at least grave doubt as to whether) the jury's verdict rests solely on invalid predicate—either conspiracy to commit Hobbs Act robbery or attempted Hobbs Act robbery. At the Court's request, the Government filed a response to Potter's reply, and with the Court's leave, Potter submitted a surreply.

**DISCUSSION**

Under 28 U.S.C. § 2255, a prisoner in federal custody may move the sentencing court to vacate, set aside, or correct the sentence if it was imposed in violation of the Constitution or laws of the United States, if the court was without jurisdiction to impose the sentence, if it exceeded the maximum allowed by law, "or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Here, Potter argues his § 924(c) conviction violates due process because the Court erroneously instructed the jury it could convict him of this offense based on invalid predicates and the error was not harmless under *Brecht*.[3]

---

[3] A district court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* § 2255(b). In determining whether a hearing is necessary, the court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Gov't of the V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). Although the threshold for obtaining an evidentiary hearing on a § 2255 motion is "reasonably low," a hearing is unnecessary in this case because Potter has not alleged "facts warranting relief under § 2255 that are not clearly resolved by the record." *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005) (citations omitted).

5

Section 924(c) "authorizes heightened criminal penalties for using or carrying a firearm 'during and in relation to,' or possessing a firearm 'in furtherance of,' any federal crime of violence or drug trafficking crime." *Davis*, 139 S. Ct. at 2324. A "crime of violence" is defined in § 924(c)(3) as:

> an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In *Davis*, the Supreme Court held the residual clause of this definition—§ 924(c)(3)(B)—was unconstitutionally vague. 588 U.S. at 470. Thus, to qualify as a crime of violence under the statute, a federal felony must satisfy the elements clause, § 924(c)(3)(A). *See Stoney*, 62 F.4th at 111 n.2 (holding that after *Davis*, "only § 924(c)(3)(A), the 'elements clause,' contemplates whether a felony offense qualifies as a crime of violence").

In charging the jury on the § 924(c) count, the Court instructed that to find Potter guilty of the offense of possessing a firearm in furtherance of a crime of violence, it had to find:

> First, that the defendant, Ira Potter, committed the crime charged in Count 1 and Count 2. And I instruct you that conspiracy to interfere with interstate commerce by robbery and interference with interstate commerce by robbery are crimes of violence.
> So, second, that the defendant possessed or aided and abetted in the possession of a firearm.
> And, third, that the defendant possessed or aided and abetted in the possession of that firearm in furtherance of a crime of violence as charged in Count 1 and 2, respectively.

Tr. 3.210, Feb. 16, 2005, ECF No. 106; *see also id.* at 3.211 ("As I have already instructed you, conspiracy to commit robbery and robbery are crimes of violence.").

6

The parties agree this instruction was incorrect in that, in light of developments in the law since Potter's trial, the offense of conspiracy to interfere with commerce by robbery, i.e., conspiracy to commit Hobbs Act robbery, no longer qualifies as a crime of violence under the elements clause.[4]  The Court also instructed that the crime charged in Count Two, "interference with interstate commerce by robbery," was a crime a violence. *Id.* at 3.210-11.  This instruction was correct as to the offense of completed Hobbs Act robbery, which qualifies as a crime of violence under § 924(c)'s elements clause and thus remains a valid § 924(c) predicate. *Stoney*, 62 F.4th at 114.  But while labeled as a robbery charge, Count Two charged Potter with attempted as well as completed Hobbs Act robbery, and, as the Government concedes, the Indictment and jury instructions in this case permitted a verdict on either of two theories: a completed robbery based on the theft of the keys to the bar or an attempted robbery based on the attempt to steal the bar's proceeds.  Gov't's Suppl. Resp. 4, ECF No. 171.  The Supreme Court has since held that attempted Hobbs Act robbery is not a crime of violence for purposes of § 924(c). *United States v. Taylor*, 596 U.S. 845, 852 (2022).  So, the Court's instruction that the crime charged in Count Two was a crime of violence was also incorrect insofar as that Count charged attempted Hobbs Act robbery.

The jury returned a general verdict on Count Three, finding Potter guilty of "possessing a firearm, and aiding and abetting in the possession of a firearm in furtherance of [a] crime of violence on or about February 13, 2004," without specifying the predicate crime of violence.  Tr.

---

[4] Although the Third Circuit has not addressed the issue in a published opinion, the Government concedes conspiracy to commit Hobbs Act robbery is not a crime of violence, Gov't's Resp. 1, ECF No. 165, as several other circuits have held, *see, e.g.*, *United States v. Barrett*, 937 F.3d 126, 127 (2d Cir. 2019), *abrogated on other grounds by Lora v. United States*, 599 U.S. 453 (2023); *United States v. Sims*, 914 F.3d 229, 233 (4th Cir. 2019) (en banc); *accord United States v. Smith*, No. 16-4301, 2023 WL 8797892, at *3 (3d Cir. Dec. 20, 2023) (agreeing Hobbs act conspiracy no longer counts as a § 924(c) predicate because it is not a crime of violence).

3.225, Feb. 16, 2005, ECF No. 106 (reviewing verdict form). "A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008). "[Q]uestions involving juries that are 'instructed on multiple theories of liability, one of which is improper,' are 'trial errors subject to harmless-error review.'" *United States v. Duka*, 671 F.3d 329, 354 (3d Cir. 2011) (quoting *Pulido*, 555 U.S. at 60-61). Thus, the question is whether the Court's instructional errors were harmless under the *Brecht* standard applicable on collateral review. *See United States v. Bentley*, 49 F.4th 275, 289 n.9 (3d Cir. 2022) (holding "*Brecht*'s standard governs section 2255 motions").

Under *Brecht*, a constitutional trial error warrants habeas relief only if "the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). This requires "more than a 'reasonable possibility' that the error was harmful." *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (citation omitted). But if the reviewing court "is in grave doubt" as to whether the error had such an effect, the error "is not harmless." *O'Neal v. McAninch*, 513 U.S. 432, 435-36 (1995).

To satisfy *Brecht* here, it is not enough for Potter to show his § 924(c) conviction may have been based in part on invalid predicate. He must show more than a reasonable possibility the § 924(c) conviction was based *only* on an invalid predicate. *See United States v. Wilson*, 960 F.3d 136, 151 (3d Cir. 2020) (finding an instructional error harmless on direct appeal where there was "no 'reasonable possibility' that the jury based its § 924(c) convictions *only* on" an invalid as opposed to a valid predicate). In evaluating harmlessness, the Court considers the error in the context of the record as a whole. *See id.* (consulting the verdict form and the evidence presented at trial to determine whether there was a reasonable possibility the jury's § 924(c) convictions were

8

based only on invalid predicates); *cf. Stoney*, 62 F.4th at 112 & n.3 (holding a court may consult the record to "establish the predicate crime for a § 924(c) guilty plea"). The strength of the evidence on an alternative valid theory is particularly relevant. *United States v. Howell*, No. 18-3216, 2021 WL 3163879, at *3 (3d Cir. July 27, 2021) (applying plain error standard). "Where there is a clear alternative theory of guilt, supported by overwhelming evidence, a defendant likely cannot show that an instruction permitting the jury to convict on an improper basis was not harmless error." *Id.* (quoting *United States v. Andrews*, 681 F.3d 509, 521 (3d Cir. 2012)).

The alternative valid theory here is that Potter possessed a gun in furtherance of a completed Hobbs Act robbery, as charged in Count Two. As noted, the Indictment and jury instructions permitted the jury to convict Potter of this Count by finding either a completed robbery based on the theft of the keys to the bar or an attempted robbery based on the attempt to steal the bar's proceeds. The Indictment charged that Potter and his codefendants

> unlawfully took and attempted to take and obtained, and aided and abetted the unlawful taking and obtaining of personal property, *including money*, and other items of value, *including keys*, from the person or in the presence of another and against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person and property.

Indictment 5, ECF No. 10 (emphasis added). In instructing the jury on Count Two, the Court began with the language of the Indictment, explaining that Potter was charged with

> unlawfully tak[ing] and attempt[ing] to take and obtain . . . personal property and other items of value, *including keys* from the owner of Cousin Danny's Exotic Haven in the presence of [the bar owner] and others, against their will by means of actual or threatened force, violence and fear of injury, immediate and future to [the bar owner] and others.

Tr. 3:202-03, Feb. 16, 2005, ECF No. 106 (emphasis added). The Court also instructed the jury that "to meet its burden of proof that the defendant committed robbery," the Government had to "establish beyond a reasonable doubt . . . that the defendant obtained or took or attempted to take

based only on invalid predicates); *cf. Stoney*, 62 F.4th at 112 & n.3 (holding a court may consult the record to "establish the predicate crime for a § 924(c) guilty plea"). The strength of the evidence on an alternative valid theory is particularly relevant. *United States v. Howell*, No. 18-3216, 2021 WL 3163879, at *3 (3d Cir. July 27, 2021) (applying plain error standard). "Where there is a clear alternative theory of guilt, supported by overwhelming evidence, a defendant likely cannot show that an instruction permitting the jury to convict on an improper basis was not harmless error." *Id.* (quoting *United States v. Andrews*, 681 F.3d 509, 521 (3d Cir. 2012)).

The alternative valid theory here is that Potter possessed a gun in furtherance of a completed Hobbs Act robbery, as charged in Count Two. As noted, the Indictment and jury instructions permitted the jury to convict Potter of this Count by finding either a completed robbery based on the theft of the keys to the bar or an attempted robbery based on the attempt to steal the bar's proceeds. The Indictment charged that Potter and his codefendants

> unlawfully took and attempted to take and obtained, and aided and abetted the unlawful taking and obtaining of personal property, *including money*, and other items of value, *including keys*, from the person or in the presence of another and against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person and property.

Indictment 5, ECF No. 10 (emphasis added). In instructing the jury on Count Two, the Court began with the language of the Indictment, explaining that Potter was charged with

> unlawfully tak[ing] and attempt[ing] to take and obtain . . . personal property and other items of value, *including keys* from the owner of Cousin Danny's Exotic Haven in the presence of [the bar owner] and others, against their will by means of actual or threatened force, violence and fear of injury, immediate and future to [the bar owner] and others.

Tr. 3:202-03, Feb. 16, 2005, ECF No. 106 (emphasis added). The Court also instructed the jury that "to meet its burden of proof that the defendant committed robbery," the Government had to "establish beyond a reasonable doubt . . . that the defendant obtained or took or attempted to take

or obtain, the personal property of another or from the presence of another and that the defendant took or attempted to take this property by force, violence or intimidation." *Id.* at 3:203. The Court then explained the term property meant "money or anything of value," *id.* at 3:204, having previously indicated that the other "items of value" Potter was charged with taking or attempting to take included keys, *id.* at 3:203.

While acknowledging the instructions permitted the jury to convict based on either theory, Potter argues the record does not support finding the jury believed stealing the keys was sufficient to constitute a completed Hobbs Act robbery.[5] Reply Supp. § 2255 Pet. 11, ECF No. 169. The Court disagrees.

As Potter notes, at trial, jurors heard substantial evidence that the defendants conspired and attempted to take proceeds of Cousin Danny's Exotic Haven, first by breaking into the home of the bar's owner, where they believed the money was kept, and then by breaking into the bar to look for the money there. But the jury also heard substantial evidence that, while in the home, the defendants stole the keys to the bar by force after beating the bar owner with a baseball bat and hitting him in the head with guns. The prosecutor referred to the taking of the keys in his opening statement, noting that once the defendants were satisfied the bar's proceeds were not in the house, they "stole some keys to the bar." Tr. 1.21, Feb. 14, 2005, ECF No. 104. The bar owner testified about the taking of the keys, as did one of Potter's codefendants. Tr. 2:88, 2:254, Feb. 15, 2005, ECF No. 105. And the police officers who were dispatched to the bar after the bar owner reported

---

[5] Potter also argues the record does not support finding the jury returned a conviction under § 924(c) solely on the basis of a completed Hobbs Act robbery based on the theft of the keys. Reply Supp. § 2255 Mot. 11, ECF No. 169. But the § 924(c) conviction need not have been based *solely* on the completed Hobbs Act robbery so long as there is a reasonable possibility it was based in part on that offense. *See Wilson*, 960 F.3d at 151 (upholding § 924(c) conviction where there was no reasonable possibility the conviction was based only on an invalid predicate).

10

the crime testified about recovering the stolen keys from the codefendants who entered the bar. *Id.* at 2:166-68, 2:175-76. Indeed, in rejecting Potter's challenge to the sufficiency of the evidence to support his convictions on direct appeal, the Third Circuit observed that while "the purpose of the conspiracy was to obtain the monies derived from the operation of Cousin Danny's Bar[,] Count Two, the substantive Hobs Act crime, had as its purpose the theft of keys to the Bar by means of a violent robbery." *Potter*, 218 F. App'x at 136.

Potter also points to the Government's closing argument as furthering the notion that this case was about an attempted, as opposed to a completed, Hobbs Act robbery. And the Government concedes that, during the closing, the prosecutor highlighted this aspect of the offense, stating: "Now, this was a robbery—an attempted robbery—they weren't successful, they didn't get the $20,000.00 that they were looking for, but had they been successful, it certainly would have depleted the assets of Cousin Danny's Exotic Haven." Tr. 3:150, Feb. 16, 2005, ECF No. 106. Notably, the prosecutor also repeatedly referred to the crime as a "robbery" or a "home invasion robbery." *See id.* at 3:139, 3:141-42, 3:146, 3:148. Moreover, nothing in the closing excluded the possibility of a conviction based on the theft of the keys, conduct the prosecutor also referenced during the closing when describing what happened inside the bar owner's home. *See id.* at 3:134 (describing the violent confrontation in which defendants demanded money from the bar owner and stole the keys to the bar).[6]

---

[6] After describing what the victims experienced during the home invasion, the prosecutor noted that once the robbers left the home, the bar owner was "able to break free from his restraints and he runs and calls for help." Tr. 3.135, Feb. 16, 2005, ECF No. 106. He continued: "Now, the process begins, ladies and gentlemen, now the police get involved in the case, now the evidence begins to—begins to get developed in this case." *Id.* Potter argues this statement also conveyed to the jury that this case was about an attempted robbery, as "the prosecutor told the jury that it should focus on the evidence developed from *after* the defendants left the [bar owner's] home." Reply Supp. § 2255 Mot. 10, ECF No. 169. The Court disagrees. By referencing the evidence developed by the police, which necessarily was collected after the defendants left the home, the

11

As noted, the jury instructions expressly permitted a conviction for completed Hobbs Act robbery based on the theft of the keys, referencing the keys as an "item[] of value" Potter was charged with taking from the bar owner, against his will, "by means of actual or threatened force, violence and fear of injury." *Id.* at 3:203. Potter maintains "no instruction invited the jury to find that taking the keys alone was sufficient for conviction on Count Two," noting the Court defined "property" for the jury as "money or anything of value." Reply Supp. § 2255 Mot. 12, ECF No. 169. But this instruction followed the Court's reading of Count Two of the Indictment, which singled out keys as a thing of value. As both parties acknowledge, the Indictment, with its reference to both keys and money as possible objects of the robbery, was provided to the jury for use during deliberations. Tr. 3:195, Feb. 16, 2005, ECF No. 106.

Upon review of the record, the Court agrees with the Government "it is entirely and reasonably possible that the jury found an actual robbery involving the theft of the keys to the bar, a conclusion fully consistent with the charge, the evidence, and the instructions." Gov't's Suppl. Resp. 6, ECF No. 171. As noted, this conclusion is also consistent with Third Circuit's view of the case on direct appeal. *Potter*, 218 F. App'x at 136 (characterizing Count Two as directed to "the theft of the keys to the Bar by means of a violent robbery"). Because the evidence amply supports the alternative valid theory that Potter possessed a gun in furtherance of a completed

---

prosecutor in no way downplayed the importance of the events inside the home. *See* R. 3:135, Feb. 16, 2005, ECF No. 106 (stating, after describing the events inside the home, "[t]hat's what this defendant and his co-conspirators are responsible for, ladies and gentlemen," and adding, "[i]t's horrific"). Even if the jury would reasonably have understood the prosecutor's statement in the way Potter interprets it, the evidence that "beg[an] to get developed" after the bar owner contacted the police was not limited to evidence of the events that occurred after the robbers left the home but also included evidence gathered from the victims regarding the events inside the home, such as the bar owner's 911 call and the victims' identification of the defendants in a photo array. *See id.* at 3:138, 3:140-41.

Hobbs Act robbery, he cannot show more than a reasonable possibility that his § 924(c) conviction was based solely on an invalid predicate, even though the evidence also shows he possessed the gun in furtherance of an attempted robbery.

The Fourth Circuit's decision in *United States v. Ali*, 991 F.3d 561 (4th Cir. 2021), is instructive. There, as here, the jury was instructed it could convict the defendant of several Hobbs Act robberies on either of two theories—in that case an aiding and abetting theory or a conspiracy theory. *Id.* at 566, 572. The jury was also instructed that either version of the offense would qualify as a predicate crime of violence for the § 924(c) charges against the defendant. *Id.* Applying plain error review, the appellate court found the district court erred in instructing the jury that conspiracy was a crime of violence and that the error was plain. *Id.* at 573. But the appellate court found the uncertainty as to which theory the jury adopted when it found him guilty of the § 924(c) counts was insufficient to show the error affected the outcome of the district court proceedings. *Id.* at 575 ("[A] showing of uncertainty as to 'whether the verdict returned by the jury rested solely on the mis-instruction' does not meet the defendant's burden of establishing actual prejudiced under [the plain error test]." (internal quotation marks and citation omitted)). Rather, reviewing the record, the court concluded that unrebutted evidence in the record supported a finding that the defendant "did more than simply conspire to commit robberies[,] . . . he assisted their commission." *Id.* at 575-76. The court thus concluded the defendant could not meet his burden to show the outcome would have been different absent the improper instruction. *Id.*

The same is true here. The bases for Potter's Hobbs Act robbery and § 924(c) convictions are ambiguous. But the Government unquestionably proved Potter was guilty not only of an attempted Hobbs Act robbery but of a completed robbery based on the theft of the keys. For this

13

reason, he cannot show more than a reasonable possibility the Court's instructional errors affected the verdict.

Accordingly, Potter's § 2255 motion is denied.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.